Beach
*v.*
Norton.

BEACH *against* NORTON and others.

A court of chancery, in this state, will not take cognizance of matters properly cognizable by the court of probate.

It is within the power and the duty of the court of probate, not only to correct all errors which have arisen in inventories exhibited, but to receive additional inventories, and to settle the account of the executors upon the basis of equity.

Therefore, where a testator, domiciled in this state, left property here and in the states of *Massachusetts, New-York* and *Ohio;* and his executors proved his will before a competent court in each of these states, and exhibited an imperfect inventory of his estate to the court of probate for the district in which he last dwelt; it was held, on a bill in chancery, brought by one of the executors against his co-executors and persons claiming under the will, for a final settlement of the estate, that such bill was not sustainable.

Where it was averred, in such bill, that the testator was interested in sundry copartnerships in the state of *New-York,* to the amount of about 100,000 dollars; in notes and bonds, given for *Allegany* lands, against seventeen persons specified, with the sum due from each, amounting to 11,151 dollars; in other choses in action, given for such lands, about 20,000 dollars more; in other property in the state of *New-York,* to the amount of about 50,000 dollars; and in the state of *Ohio,* to the amount of about 7000 dollars; which interests were committed to the management of two of the executors, in whose hands were all the documents, inventories and accounts relative thereto, and who refused to permit the plaintiff to examine them; it was held, 1. that the allegations in the bill regarding these interests, except the notes and bonds specified, were too general to lay the foundation of any relief; 2. that it is competent to the court of probate to call executors to account for the estate entrusted to their charge; 3. that such court has full power, to obtain possession, by a summary process, of all documents, and to compel a discovery, in relation to the estate in settlement; 4. that the bill was insufficient, for not shewing, that the plaintiff had demanded an account of his co-executors, or that he had applied to the court of probate to call them to account.

Where it was averred, in such bill, that two of the executors had in their possession and subject to their exclusive management and controul 100,000 dollars of the testator's estate; that they had lost, by their negligence and mismanagement, 50,000 dollars, due from *H. N.,* 40,000 dollars, due from *E. B.,* 5,000 dollars, due from *A. R.* and 7,000 dollars due from *A. P.* and many other debts; and that they had each concealed 100,000 dollars fraudulently, and appropriated it to their own use; it was held, that no foundation was laid, by these general, sweeping and undefined allegations, for the interposition of a court of chancery.

Where it appeared from the allegations in such bill, that much of the testator's estate lay within the jurisdiction of the courts to which appertains the settlement of estates in the states of *New-York* and *Ohio;* and that the will had been proved before those courts; but it did not appear, that any inventory had been made and exhibited to them, or that there had been any settlement of claims or any proceedings before them; it was held, that the plaintiff was entitled to no relief on these allegations; for 1. persons abroad could not be made parties, so as to affect their rights; 2. a court of chancery in *Con-*

*Litchfield,*
June, 1832.

Beach
*v.*
Norton.

*necticut* cannot exercise jurisdiction or controul over those courts or their proceedings; 3. the rights of the parties to foreign assets and all the proceedings in relation to them, depend upon and are governed by the *lex rei sitæ.*

Where the testator gave specific legacies and made specific devises to his wife and children, by explicit and unambiguous provisions in his will; it was held, that this furnished no sufficient reason for drawing the settlement of the estate from the appropriate tribunal into a court of chancery.

Where it appeared from the bill, that there were difficulties and embarrassments attending the settlement of the estate, from the conveyance of real estate by the executors, pursuant to covenants made by the testator, and from the acceptance by them of mortgaged lands, in lieu of the debts secured thereby; it was held, that these difficulties and embarrassments did not render the interference of a court of chancery necessary or proper.

The statute under the title of "Account," (*sect.* 4, 5.) gives remedy, by bill in equity, only in favour of an executor, who is also a residuary legatee, against two or more co-executors to recover his legacy, and is wholly inapplicable to a suit in chancery, by one executor against his co-executors, for a final settlement of the estate.

THIS was a bill in chancery, brought by *Theron Beach*, one of the executors of the will of *Birdsey Norton*, deceased, against his executors and the devisees and legatees under the will, to obtain, by a decree of the superior court, a settlement of that estate.

The prominent features of the bill, which was voluminous, are sufficiently exhibited in the following abstract.

On the 26th of *March*, 1812, *Birdsey Norton* made his will, duly perfected for the conveyance of real and personal estate, according to the laws of this state, and the states of *Massachusetts, New- York* and *Ohio*, by which he gave to his wife, *Hannah Norton*, one half of his homestead, and to his son, *Frederick A. Norton*, the other half; to his wife one half of his household furniture, except his clock, and to his two daughters, *Mary C. Norton* and *Marana E. Norton*, the other half; to his son his clock and gold watch, with the chain, seal and key,—also 1200 dollars, to complete his education at *Yale-College;* to his daughter *Mary C.* 1000 dollars, and to his daughter *Marana E.* 1500 dollars, for the expenses of their education; to his wife one third part of the residue of his real estate, during her life, (in lieu of dower) and one third part of the residue of his personal estate, to be hers absolutely and forever;—7000 dollars of stock in the *Bridgeport Bank*, standing in her name, to be taken as part of her share of the personal estate; to his three children, *viz. Frederick A., Mary C.* and *Marana E.*, and their heirs forever, as tenants in common, all the residue

of his real estate, wherever situated, whether in possession, remainder or reversion,—and to them also, all his personal property, not previously disposed of, to be equally divided between them.    The testator then authorized his executors to sell all or any part of the real estate devised to his children, until they should, respectively, arrive at the age of twenty-one years, and to account to them for the avails.    Lastly, he appointed *Theron Beach,* (the plaintiff,) *Erastus Lyman, William Stanley,* jun., *Frederick A. Norton,* and *Elisha Beach,* his executors.

The testator died, on the 27th of *March,* 1812 ; and shortly afterwards, the executors accepted the trust, and the will was proved and established, by the court of probate for the district of *Litchfield,* in this state, and also by the proper courts in the states of *New-York, Massachusetts* and *Ohio.*    An inventory was made and returned of the estate, credits and choses in action of the testator, amounting to 160,772 dollars, 6 cents, including the doubtful and bad.    This inventory was defective and erroneous : Much of the personal property was estimated higher, and some lower, than its value on sale ; some being perishable, was lost or destroyed, without negligence ; some of the notes called good, were uncollectable ; some did not belong to the testator ; a small proportion only of the book accounts were actually due, and many due were uncollectable.    The interest of the testator in the copartnership of *B. Norton & Co.,* appraised at 12,105 dollars, 41 cents, was in fact but about 6,900 dollars ; and his interest in the copartnerships of *Norton & Bush* and *Norton, Bush & Co.,* appraised at 34,871 dollars, 17 cents, was nothing, those concerns being insolvent.

The testator was interested in personal property, credits and choses in action, which are not noticed in the inventory.    He was interested in a great number of mercantile concerns in the state of *New-York, viz.* in that of *Joseph Colt & Co.* at *Geneva,* in that of *Samuel Colt & Co.* at *Palmyra,* in that of *Norton & Beach* at *East-Bloomfield,* in that of *James K. Guernsey & Co.* at *Lima,* in that of *Luther Cole* at *Canandaigua,* in that of *Birdsey Norton* at *Canandaigua,* and in that of *Isaac Davis & Co.* at *Buffalo.*    The testator's interest in these concerns, at the time of his death, amounted to about 100,000 dollars ; but the precise amount the plaintiff was unable to state, because these concerns were committed exclusively to *F. A.*

*Norton* and *E. Lyman*, who refuse to permit an inspection of books and papers.

The testator was also interested in notes and bonds, given for *Allegany* lands, which were owned jointly by him and *Eben F. Norton* and the representatives of *Nathaniel Norton*, deceased, in equal proportions, against seventeen persons and partnerships specified, with the sum due from each, amounting to 11,151 dollars, besides a like interest in about 20,000 dollars more, which the plaintiff cannot specify, for want of vouchers in the defendants' hands.

The testator also died possessed of and interested in other personal property, credits and choses in action, amounting, in the state of *New-York*, to about 50,000 dollars, and in the state of *Ohio*, to about 7,000 dollars; in regard to which, the plaintiff, for the reason before stated, is not precisely informed.

The testator's interest in these concerns, in the bonds and notes for the *Allegany* lands, and in said personal property, in *New-York* and *Ohio*, is but partially included and imperfectly estimated in said inventory.

The testator was indebted, at his death, to the amount of 60,000 dollars; which has been paid by his executors. His personal property amounted to 200,000 dollars, and was more than sufficient to pay all the debts and all the specific and pecuniary legacies.

A small part only of the testator's effects, not exceeding in the whole 8,250 dollars, has come into the possession or under the controul of the plaintiff; and these effects he has faithfully applied to the discharge of debts against the estate and to the payment of legacies. He has, moreover, advanced 20,000 dollars from his private funds to pay the debts against the estate, and legacies and bequests in the will; for which he has never been repaid. He has also advanced from his private funds 500 dollars to *Mary C. Norton*, and the same sum to *Marana E. Norton*, in part discharge of the bequests to them respectively; and 15,000 dollars towards defraying the expenses of settling the estate.

The executors have taken 10,000 dollars, arising from the sale of the widow's interest in the real estate, and applied the money to the payment of debts; for which they are accountable to the plaintiff, her second husband.

At the time of the testator's death, his business was very

complicated and extended; his property was in the hands of many different persons and scattered in many different states; his debtors were numerous and widely dispersed; and it was, therefore, necessary for the executors to divide the various duties of their trust, allotting distinct parts to the separate care and superintendence of one or more. The care and superintendence of the property in *Connecticut*, and especially of the interest in the concerns of *Norton & Bush, Norton, Bush & Co.* and *Birdsey Norton & Co.* was undertaken by the plaintiff, but in which he had the assistance of the other executors; and all the plaintiff's time was employed, for many years, in the business thus undertaken by him, and it was impossible for him to attend to the other concerns of the estate.

Immediately after the testator's death, *Frederick A. Norton* and *Erastus Lyman* took into their own hands the exclusive management of the testator's interest in the mercantile concerns of *Joseph Colt & Co., Samuel Colt & Co., Luther Cole, Birdsey Norton, Norton & Beach, James K. Guernsey & Co.* and *Isaac Davis & Co.*, and have continued to this time in the exclusive management thereof; and also in the testator's interest in the bonds and notes given for *Allegany* lands; and in other bonds, credits and choses in action in the states of *New-York* and *Ohio;* the other executors having never intermeddled with this property.

From the bonds, credits and choses in action, of which *F. A. Norton* and *E. Lyman* had the entire and exclusive management and controul, they have collected 100,000 dollars; and from this and other property subject to their management and controul, they might, by the use of due diligence, have received the further sum of 50,000 dollars, which they lost, by their misconduct and negligence. For, at the testator's death, *Heman Norton*, as administrator of *Nathaniel Norton*, was indebted to the testator in the sum of 43,000 dollars, and jointly with *Elisha Beach* in the sum of 50,000 dollars, and in his individual capacity, in the sum of 30,000 dollars, growing out of various connexions in business, and in the sum of 10,000 dollars more, on account of collections made by him of debts belonging to the estate: and from the testator's death until the 1st of *June*, 1818, *Heman Norton* was solvent, having abundance of property, whereby these debts, by the use of due diligence, might have been secured and collected; which facts were all known to *F. A. Norton* and *E. Lyman;* yet they neg-

ligently permitted such debts to remain unsecured and uncollected, whereby all, except about 48,000 dollars, were wholly lost ; and to secure that sum, it became necessary to receive unproductive property, and to advance money to remove incumbrances, by which the estate of the testator was needlessly wasted. Of a debt of about 40,000 dollars, due in 1812 from *Elisha Beach* to the testator's estate, a part was lost by the negligence and misconduct of *F. A. Norton* and *E. Lyman ;* and for a part, *viz.* about 20,000 dollars, *F. A. Norton* took the note of *E. Beach* to himself, in his individual capacity, and exonerated the debtor from his indebtedness to the estate.

A debt due from *Alpheus Richards* to *N. & B. Norton*, in which the testator was interested to the amount of 5000 dollars, and a debt from *Augustus Porter*, in which the testator was interested to the amount of 7000 dollars, the exclusive management of which was committed to *F. A. Norton* and *E. Lyman*, were lost, by their negligence and misconduct. And they lost, in the same way, many other debts and executions of the testator, so committed to them.

Of the other property, and credits, and choses in action, belonging to said estate, *F. A. Norton* has received the further sum of 100,000 dollars ; and *E. Lyman* the further sum of 100,000 dollars ; they have also received large sums of money and amounts of property belonging to said estate ; which they have always neglected and refused to appropriate to the payment of debts against the estate and in fulfilment of the will ; but they keep such money and property in their own hands, and are colluding with each other to cover up and conceal the same, and to subject the plaintiff to damage, by withholding such just appropriations as they ought to make.

The plaintiff has faithfully applied all the property and money belonging to said estate, which have come to his hands, to the payment of the debts against said estate and to the discharge of the legacies and bequests of the will ; yet in said payments to *Mary C. Norton* and to *Marana E. Norton*, he neglected to take any vouchers, by which such payments may be proved in a court of law. He therefore prays, that they may disclose on oath concerning said payments.

A suit has been commenced, by the judge of probate, against the executors and their sureties, on the bond given by them ; and by reason of *F. A. Norton* and *E. Lyman* having received said property and money, and refusing to apply the same in payment of said debts and in discharge of said legacies and

bequests, and by reason of their other neglects and misconduct, the plaintiff is in danger of being deeply subjected in the suit on said bond.

It is now about eighteen years since the death of *Birdsey Norton ;* and there has been no settlement of his estate as between the executors, or as between the executors and the legatees. There are in the possession of *F. A. Norton* and *E. Lyman* a great number of inventories, vouchers, receipts, letters, books and miscellaneous documents relating to the estate, without which it is impossible to settle the accounts, which they refuse to exhibit or to permit to be seen by the plaintiff. They are also acquainted with many facts in relation to those accounts, which they refuse to disclose, and of which the plaintiff has no legal proof, but without the knowledge of which it is impossible to settle such accounts.

By reason of the facts before stated, it has become impossible to settle said accounts and said estate, before the court of probate ; and the plaintiff is without adequate remedy at law.

He is willing and offers to exhibit all the documents in his possession, and to disclose all the facts within his knowledge regarding said estate : And he prays, that his co-executors may be ordered to disclose on oath their knowledge of the facts, and that all books and documents in their possession, touching said estates, may be exhibited.

The several legatees under the will and their husbands have received and applied to their own use, a large amount of personal property and money belonging to said estate, to an amount of which the plaintiff is uninformed, and of which he has no legal evidence : And he therefore prays, that such legatees and their husbands may be examined and may disclose on oath the facts within their knowledge.

Since the testator's death, his daughter *Mary C.* has been married to *Henry D. Sewall ;* his daughter *Marana E.* to *Joseph Goddard ;* and his widow *Hannah,* to the plaintiff. The latter died on the 22nd of *September,* 1826, leaving a daughter, by the plaintiff, to whom she devised and bequeathed her property, real and personal, including the *Bridgeport* bank stock mentioned in the will of her former husband.

Controversies have arisen and exist between the several legatees and their representatives, as to the amount received by each, and in relation to what they are entitled to, under the will, especially in relation to said bank stock, which is claimed,

by the representatives of said *Hannah* as a specific legacy, and
by the other legatees as a general legacy, not a specific one.
There are other controversies between said representatives
and the legatees and their husbands, in consequence of the executors having received mortgaged land in payment of the mortgage debts, and other real estate in discharge of other debts, and having taken up bonds given to convey real estate, receiving back the real estate so covenanted to be conveyed; and in various other ways, large quantities of real estate have been received in payment of debts due to the estate. In other instances, money has been paid to remove incumbrances. In many cases, the executors have permitted the legal title to be taken to one or all of the testator's children, and in other cases, to one or more of the executors; who, in some instances, still retain it, and in others, have transferred it and received the avails thereof.

All the real estate so received in payment of debts, and that covenanted by the testator to be conveyed, ought, in equity, to be considered as his personal estate; and that received by said *Frederick*, and by said *Mary* and *Marana* and their husbands, from the sale of said real estate, and the rents and profits thereof, ought to be accounted as received by them in part or full discharge of their respective shares of the testator's real estate.

There are, moreover, disputes as to the amount of real estate thus received in payment of debts, and thus covenanted to be conveyed; and in other respects, those interested set conflicting claims to the property, and threaten to commence actions at law against the executors.

The bill prayed for an account to be taken of all the property, credits, choses in action, &c. belonging to said estate, which have ever come into the possession of the executors; and of all moneys paid and property delivered, by them, in discharge of their trusts; and of all services, expenditures and property on hand; for an enquiry into all the facts stated in the bill; for a settlement of the aforesaid controversies; and for a decree in favour of the plaintiff, that he may be reimbursed the sums so advanced from his private funds; and that the executors, who have property belonging to said estate on hand, or who might, by the use of due diligence, have collected moneys, which they have lost, and thus become accountable, shall pay the same to those entitled thereto; and if any

HARVARD LAW SCHOOL LIBRARY

persons entitled to part, have received more than their share, that they refund the excess; and that the legal title to said real estate be conveyed to those entitled thereto.

To this bill there was a general demurrer; and the case was thereupon reserved for the consideration and advice of this Court.

*T. Smith* and *L. Church*, in support of the demurrer, remarked, That this bill is an attempt to draw into a court of equity the entire settlement of a large and complicated estate : matters, which not only appertain to the sole jurisdiction of the courts of probate in this state, but also to the exclusive jurisdiction of similar courts in other states, acting under independent sovereignties, and by virtue of distinct and independent systems of law. It is, obviously, a mere experiment; novel and dangerous in its character; for which there is as little principle as there is precedent to support it.

They contended, 1. That the sole remedy of a party claiming against, or interesed in the settlement of, the estate of a deceased person, under every difficulty and embarrassment, is in the court of probate; a tribunal that possesses powers and transacts business in a manner eminently fitted to a successful investigation of such matters. *Sheldon* & al. v. *Sheldon* & al. 2 *Root* 512. *Bacon* v. *Fairman* & al. 6 *Conn. Rep.* 121, 128. *Pitkin* & al. v. *Pitkim* & al. 7 *Conn. Rep.* 315. *Pitkin* v. *Pitkin* & al. 7 *Conn. Rep.* 307. *Bailey* & al. v. *Strong* & al. 8 *Conn. Rep.* 278. From an examination of the averments in the bill, it will appear, that the various topics of enquiry therein suggested, are appropriate to the jurisdiction of a court of probate. Thus, if the inventory is imperfect; if some articles are charged too high, and others too low; if some things are included, which the testator did not own, and other things omitted, which he did; if some notes and other choses in action were collectable, and others not; in short, how various and imperfect soever the errors may be; the court of probate is the only tribunal that can correct them, and (in the language of *Daggett*, J.) "make all just and proper allowances." 6 *Conn. Rep.* 128. So also, any questions relative to what debts the testator owed, and the amount, can be raised, by any of the parties interested in the subject, upon the presentation of *an account*, by the executors, with greater facilities for ascertaining the truth, than in any other way. The executors would, jointly and severally,

present a statement of debts paid ; and then every party in interest would appear before the court, and take all proper exceptions ; and upon a full hearing, the amount could be ascertained, which would be allowed.

So the claim, that the plaintiff has received from the assets only 8250 dollars, when the inventory amounted to more than 160,000 dollars, that he had the principal, if not the sole management of the *Connecticut* part of the estate, and that he has faithfully applied every thing that came into his hands, to the payment of debts and legacies ; the claim that the personal estate was more than sufficient to pay the debts and the specific and pecuniary legacies ; that the plaintiff has paid debts and legacies to the amount of more than 20,000 dollars out of his own private funds ; that he has paid to *Mary C.* and *Marana E.* 500 dollars each, from the same source, in part discharge of the bequests given to them, by the will ; that he has advanced 15,000 dollars, to defray the expenses of settling the estate ; that the several legatees and their husbands have taken and applied to their own use a large amount of the personal assets, and have thus obtained large portions of their respective legacies ; that two of the executors, *F. A. Norton* and *E. Lyman,* have wasted the assets ; that they have received large sums of money belonging to the estate, which should be applied in payment of debts ; that the personal assets have been converted into real estate ;—these claims present topics of enquiry congenial to the nature and character of a court of probate. The ease and promptitude with which the rights of the parties can be settled, by that tribunal, with all parties in interest, and the accounts in detail, before it, evince the wisdom of a court of chancery declining to interfere in such matters, by which embarrassments would be encreased a thousand fold, and causes of delay would arise, until the settlement of the estate would be " indefinitely postponed."

The courts of probate possess the power of ordering the production of books and papers relating to the settlement of an estate as incidental to the power of calling executors and administrators to account for or concerning estates entrusted to their charge under the 21st section of the statute regarding the settlement of estates. *Stat.* 204. Every executor holds books and papers in his hands in trust for the use and inspection of his co-executors and all others interested in the estate ; and it is a settled rule, that under such circumstances, their produc-

tion or inspection may be ordered, by a court of law. 1 *Phill. Ev.* 336. *Blakey* v. *Porter*, 1 *Taun.* 386. *King* v. *King*, 4 *Taun.* 666. *Goater* v. *Nunnely*, 2 *Stra.* 1130. *Barry* v. *Alexander*, 25 *Geo.* 3. *K. B.* cited 1 *Tidd's Pr.* 589. 1 *Phill. Ev.* 337. But if courts of law generally have not this power, still the courts of probate have; for these courts are clothed with *chancery* powers on all subjects within their jurisdiction. *Bailey* & al. v. *Strong* & al. 8 *Conn. Rep.* 278. 281.

2. That the averments in the bill relative to the execution of the will so as to operate on real and personal property according to the laws of the states of *Massachusetts*, *New-York* and *Ohio;* relative to the proof of the wills in those states before courts having cognizance of the probate of will and of competent jurisdiction; relative to the imperfections in the inventory; relative to the debts paid by the executors; relative to the application of assets in the hands of the plaintiff to the payment of debts and legacies; relative to the payment by him of 20,000 dollars, out of his private funds, in discharge of debts; relative to the sums paid by him, from the same source, towards legacies to *Mary C.* and *Marana E.;* relative to the 15,000 dollars advanced to defray the expenses of settling the estate; relative to the 10,000 dollars received by the executors from moneys arising from the sale of the widow's dower, and applied in payment of debts; relative to the assets, taken and appropriated, by the several legatees under the will, to their own use; relative to the conversion of personal assets into real estate, by some of the executors, and their taking the title to themselves; relative to the efforts which have been made, by the plaintiff, to obtain a settlement of the estate in the court of probate; with many other essential parts of the bill, are so indefinite and vague that the defendants cannot be prepared to meet them, and ought not to be required to make answer thereto. If the plaintiff is to be permitted to carry this controversy into a court of equity, he is bound to state his claims with as much fulness, accuracy and precision, as he would do, by spreading all the accounts before a court of probate. *Hempstead* v. *Reed*, 6 *Conn. Rep.* 480. *Brackett* v. *Norton*, 4 *Conn. Rep.* 517. *Griffin* v. *Pratt*, 3 *Conn. Rep.* 513.

3. That it is the sole fault of the plaintiff, that this estate has not been settled in the court of probate, as he admits that he had the entire management of the estate in *Connecticut*. It is *his* duty to render an account to the court of probate. From

his own shewing he must be conversant with all the proceedings in the settlement of the estate, of which that court has jurisdiction; and cannot need the interposition of a court of equity.

4. That the plaintiff had, and probably now has, the means of doing entire justice to himself. He started with an inventory exceeding 160,000 dollars; and while in one part of the bill, he says that the whole amount of assets received by him from every source, is not more than 8250 dollars, yet in another part he states, that the several legatees and their husbands (including himself and wife) have taken and applied to their own use a large amount of personal property belonging to the estate: (how much does not appear.) He says, indeed, that he faithfully administered such of the assets as he had in his possession; but *non constat* that there are not, even now, a large amount of assets in *Connecticut*, accessible to him, which he should administer; or that an equal or a greater amount has not been lost, by his negligence and inattention. It no where appears in this bill, that he has faithfully done his duty as executor. *Pitkin* v. *Pitkin* & al. 7 *Conn. Rep.* 314.

5. That no foundation is laid in the bill for the interposition of a court of chancery in relation to the suit on the bond. The plaintiff does, indeed, aver, that by reason of the mis-conduct of *F. A. Norton* and *E. Lyman*, he is in danger of being subjected on the bond; yet he states no one act done or omitted, by these executors, in *Connecticut*, so as to be comprised within the intent and legal scope of that instrument. It is apparent, that if there is a breach of the bond, it must be through the misconduct of the plaintiff himself.

6. That before the plaintiff can avail himself of the application of assets and the advancement of money to the payment of debts, expenses and legacies, he must previously cause the amount of such payments to be ascertained and allowed in the court of probate. He is bound to proceed as far as possible at law, before he applies in chancery. *Sheldon* & al. v. *Sheldon* & al. 2 *Root* 514.

7. That it is not necessary for the plaintiff to apply to a court of chancery for *a discovery* by his co-executors and the legatees, since their interests will compel them to speak in the final settlement of the estate before the court of probate.

8. That the plaintiff's bill is bad for *multifariousness*; for it comprises claims and controversies arising between the exec-

Litchfield,
June, 1832.

Beach
v.
Norton.

utors jointly and the legatees, and between the executors themselves. *Coe & al.* v. *Turner & ux.* 5 *Conn. Rep.* 86. 91. *Davoue* v. *Fanning*, 4 *Johns. Ch. Rep.* 199. 2 *Swift's Dig.* 222.

9. That all parties in interest are not before the court. The sureties in the probate bond, who are parties to the suit at law, and the representatives of Mrs. *Beach,* are interested in the matters involved in this controversy ; and should be made parties.

10. That the plaintiff cannot make such parts of this estate as appertain to the jurisdiction of the courts of *Massachusetts, New-York* and *Ohio,* the subjects of litigation in *Connecticut.* The objections to this course are invincible. In the first place, it is impossible to make those interested in the state, who reside abroad, parties, so as to conclude their rights. Secondly, a court of chancery in this state, cannot exercise the least controul over the probate jurisdictions of other states. Thirdly, it is impossible for any tribunal here to ascertain the rights of the parties in reference to the foreign assets. Those rights depend on local laws, which prescribe the duties of executors, and ascertain the measure of their responsibility. The *lex domicilii* may govern in the final distribution of the avails of the estate among volunteers ; but the *lex rei sitæ* is of paramount authority in all questions relative to the amount and nature of the assets, the manner in which they are to be treated, the amount of debts and the order of payment, the expenses of settling the estate, and, indeed, in all the proceedings, by which the final result is obtained. *Champlin* v. *Tilley,* 3 *Day* 303. *Hubbard & al.* v. *Hinkley;* 1 *Root* 413. *Perkins & al.* v. *Williams,* 2 *Root* 462. *Riley* v. *Riley,* 3 *Day,* 74. *Slocum* v. *Sanford,* 2 *Conn. Rep.* 533. *Sumner* v. *Child,* 2 *Conn. Rep.* 627. per *Gould, J.* *Select-men of Boston* v. *Boylston,* 2 *Mass. Rep.* 484. *Stevens* v. *Gaylord,* 11 *Mass. Rep.* 256. *Dawes* v. *Boylston,* 9 *Mass. Rep.* 337. *Richards* v. *Dutch & al.* 8 *Mass. Rep.* 506. *Fenwick* v. *Sear's* admrs. 1 *Cranch* 259. *Dixon's* exrs. v. *Ramsay's* exrs. 3 *Cranch* 319. *Doe* v. *McFarland,* 9 *Cranch* 151. *Tourton* v. *Flower & al.* 3 *P. Wms.* 369. *Burston* v. *Ridley,* 1 *Salk.* 39.

*Sherman* and *Bacon,* contra, insisted, 1. That the plaintiff was entitled to the aid of a court of equity in the settlement of this estate, on account of the complex nature of the claims,

the peculiar situation of the property and the oppressive litigation which proceedings at law would involve. If the remedy at law is doubtful—or difficult—or inadequate—chancery has jurisdiction. *Coop. Eq. Pl.* 124. 128,9. *Nicoll* v. *Trustees of Huntington*, 1 *Johns. Ch. Rep.* 166. 175.

2. That matters of *account*, especially if long and intricate, are proper subjects of chancery jurisdiction. *Coop. Eq. Pl.* 134. In this state, it is expressly provided by statute, that where there is a claim in account, by one executor against two or more executors, the remedy shall be by bill in equity. *Stat.* 34. *tit.* 1. *s.* 5.

3. That the aid of a court of chancery is necessary, in this case, to compel a *discovery.* Two of the executors have assets in their hands, which they conceal. They have also important documents, which they refuse to exhibit. 1 *Madd. Chan.* 161. Lord *Montague* v. *Dudman*, 2 *Ves.* 398. And chancery having obtained jurisdiction for the purpose of a discovery, will grant relief in matters of account and trust. *Isham* v. *Gilbert*, 3 *Conn. Rep.* 166. 1 *Fonb. Eq.* 11.

4. That *specific legacies* give chancery jurisdiction. Specific legacies are given, by the will, to each of the legatees, *viz.* the clock, watch, furniture. The *Bridgeport* bank stock is also a specific legacy. *Ashburner* v. *Macquire*, 2 *Bro. Ch. Ca.* 108. *Sayer* v. *Sayer*, 2 *Vern.* 688. *Hinton* v. *Pinke*, 1 *P. Wms.* 539. *Avelyn* v. *Ward*, 1 *Ves.* 425. *Walton* v. *Walton*, 7 *Johns. Ch. Rep.* 264.

5. That the plaintiff is entitled to go into chancery for *an injunction* against the suit on the bond. Two of the executors have been guilty of a *devastavit* for which they are all liable on the bond; but in equity one executor is not responsible for the *devastavit* of his co-executors. *Sutherland* v. *Brush*, 7 *Johns. Ch. Rep.* 22.

6. That as several of the legatees are claiming of the executors the same thing in different rights, and threaten to commence several suits against them, chancery has jurisdiction for the purpose of ordering the claimants to *interplead.* A mere claim is a sufficient ground of interpleader. 1 *Madd. Chan.* 142—7. *Coop. Eq. Pl.* 46, 7. *Langston* v. *Boylston*, 2 *Ves.* jun. 107. *Dungey* v. *Angrove*, 2 *Ves.* jun. 307. *Mitf.* 47, 8.

7. That as several of the legatees have received more than their proportions, and there is a deficiency of assets, chancery

Beach
*v.*
Norton.

will entertain jurisdiction for the purpose of compelling them to *refund.* *Anon.* 1 *P. Wms.* 495.

The plaintiff's counsel then proceeded to reply to the several exceptions taken to the bill, entering into a minute and elaborate discussion of the numerous topics presented by the opposing counsel.

DAGGETT, J. The object of this bill is to draw before the superior court the settlement of the estate of the late *Birdsey Norton.* It alleges, that his last will and testament has been proved before the court of probate in the district of *Litchfield,* within which the deceased last dwelt, and before competent courts in the states of *Massachusetts, New-York* and *Ohio,* where property belonging to the deceased remained at his death.

No proceedings have been had in relation to the settlement of this estate before any of these courts, excepting that an imperfect inventory has been made out, by the executors residing in *Connecticut,* which inventory was exhibited to the court of probate in *Litchfield* district. In this condition, the plaintiff seeks to obtain a decree of the superior court, by which this estate shall be finally settled. In this general view, it is a very singular and most unprecedented bill, and cannot, without a departure from the provisions of our statute, respecting the settlement of estates, testate, intestate and insolvent, as well as the whole course of proceedings on this subject, be sustained. The statute vests in the court of probate, the whole power of settling estates ; and this court has had occasion, several times, of late, to express a very decided opinion, that the superior court could not interfere in questions of property cognizable by the court of probate, except by virtue of its appellate jurisdiction, through a regular appeal. *Bacon* v. *Fairman* & al. 6 *Conn. Rep.* 121. *Pitkin* v. *Pitkin* & al. 7 *Conn. Rep.* 307. *Bailey* & al. v. *Strong* & al., 8 *Conn. Rep.* 278. Such an interference is the less to be countenanced, as an appeal lies from "any order, sentence, denial, decree or judgment of a court of probate." *Stat.* 208. *tit.* 32. *c.* 1. *sec.* 36.

This is a sufficient reason to dismiss the bill. But I do not mean to lay down the position, that the aid of a court of chancery can *never* be properly sought, in relation to an estate in settlement before the court of probate. Such aid may be wanted, perhaps, in certain cases ; and the judgment of a court of probate may thereby be affected. Hence, it be-

comes necessary to look into this bill, and enquire if any facts <span style="float:right">*Litchfield,* June, 1832.</span> are stated to warrant the interference of the superior court. The allegations of the bill and the positions of counsel, will <span style="float:right">Beach *v.* Norton.</span> now be considered.

1. One allegation insisted on, is, that the inventory made out by him and his co-executors, and returned to the court of probate, is very imperfect. It contained many things appraised too high,—many too low,—many perishable articles, which decayed and are lost,—many notes of hand and debts, which have proved to be bad : Especially, that the interest of the deceased in the partnership of *Birdsey Norton & Co.* was estimated at 12,105 dollars, and on settlement of the concern, it appeared to be only 6,900 dollars ; and that the interest of the deceased in the partnership of *Norton, Bush & Co.,* inventoried at 34,871 dollars, proved to be nothing, but the company were deeply insolvent.

It is very clear, that here is no difficulty, which cannot be removed, by the court of probate. It is the unquestionable duty of that court, not only to correct all errors which may have arisen in inventories, but to receive additional inventories, and to settle the account of the executors upon the basis of equity. Nor is there any thing suggested to induce a belief that there is not both the power and the disposition of the court of probate to settle this account.

2. The next allegations, which deserve notice, are those which respect the seven co-partnerships with various persons in the state of *New-York,* in which the deceased had an interest to the amount of 100,000 dollars ; also certain choses in action, amounting to 11,151 dollars, besides about 20,000 dollars more, of which the deceased was owner of two third parts with *E. F. Norton* and *Nathaniel Norton,* due from *George Smith* and sixteen others (the only specifications in the bill) and certain other choses in action belonging to the deceased in *New-York,* amounting to 50,000 dollars, and others in the state of *Ohio,* amounting to 7,000 dollars, which, the plaintiff says, were all committed to the management of *F. A. Norton* and *Erastus Lyman,* two of the executors ; and that all the documents, inventories and accounts in relation thereto, are in their hands, and they refuse to permit the plaintiff to see and examine them ; and they are imperfectly noticed in the inventory already mentioned. The objections to this part of the bill are very numerous. A few of them will be noticed.

First, here are no specifications, except in one instance, the debts due from *Geo. Smith* and sixteen others. All the other allegations are most general, and lay no foundation for any relief. It would be impossible to defend against such allegations.

Secondly, every object may be attained, by proceedings before the court of probate. The 21st section of the statute, (*tit.* 32. *Estates.*) authorizes the court, in express terms, to call executors and administrators " to account for and concerning the estate of the deceased person, entrusted to their charge." But the plaintiff does not show, that he ever even demanded an account of his co-executors ; but he simply says, that they refuse to let him see and examine those accounts, &c. which are in their possession. Nor is there any suggestion, that he has ever applied to the court of probate to call them to account, according to the provisions of the statute.

Thirdly, by the 16th section of the statute mentioned, the court of probate is vested with full power to obtain possession, by a summary process, of all property, or any bills, bonds, notes and *accounts, or any thing that may tend to disclose the estate,* and to examine, on oath, any person charged with the possession of such property, or the evidence thereof, after a demand by the executor, and a refusal. In fact, there is no doubt that the court of probate may compel the production of any papers. These courts have all the powers of a court of chancery, and in some respects much greater, in relation to the trial of questions within their jurisdiction.

3. The bill farther charges, that *F. A. Norton* and *Erastus Lyman* have 100,000 dollars of the estate of the deceased, and have exclusively managed it ;—that there was a loss of 50,000 dollars, by their neglect and mismanagement in relation to the copartnership of *H. & N. Norton ;* and 40,000 dollars more, by *Elisha Beach ;* 5,000 dollars, by *Alpheus Richards,* and 7,000 dollars by *Augustus Porter ;* and that *F. A. Norton* and *Erastus Lyman* have each concealed 100,000 dollars fraudulently, and have appropriated it to their own use. If the plaintiff had been compelled to make oath to the bill, as is the practice in *Great-Britain,* and in some, if not all, of the states, such general, sweeping and undefined allegations might, perhaps, not have appeared. But do they lay any foundation for the interposition of a court of chancery ? Let the plaintiff first settle *his account* with the court of probate, as far as it can be

settled, and then apply to that court to compel the other executors to account.   If that court will not make such an order, it will then be competent for him to appeal to the superior court.   In that mode, and in that only, can the estate be settled according to law.

And here it may not be improper to notice a suggestion on the bill, that 60,000 dollars of debts, and for aught which appears, all the debts due from the estate of the deceased, have been paid ; and that 200,000 dollars and more of personal property remains.   It certainly becomes the plaintiff, in view of these suggestions, to be more precise in his allegations of what he, as executor, has done, and of what the defendants have neglected to do.

4. It appears, by the plaintiff's allegations, that much of this property lies within the jurisdiction of the courts, to which appertains the settlement of estates in *New-York* and *Ohio*. Before these courts the will has been proved ; and the plaintiff seeks an account of this property, and avers, that the estate cannot be settled, by the court of probate in *L'tchfield*, without it.   The bill, however, no where suggests a word respecting any inventory made and exhibited to those foreign courts, or any settlement of any claims, or any proceedings before them.   It simply shows, that the will has been proved in those courts.   It is impossible to say, that, consistently with any rule of law, the plaintiff is entitled to any relief from any court, on these allegations in the bill.   The objections to the bill in this view are unanswerable.

First, there is no method of making those abroad parties, so as to affect their rights.

Secondly, the superior court of *Connecticut* cannot exercise any jurisdiction or controul over those courts, or their proceedings, but they will proceed to settle the estate regardless of any interference of any court here.   For

Thirdly, it is impossible to decide in our courts the rights of the parties to these foreign assets.   Those rights depend on local laws, by which the duties and responsibilities of the executors are to be ascertained.   The *lex loci rei sitæ* is of paramount force in all questions relative to the nature and amount of the assets, and the manner in which they are to be treated, allowance of debts, order of payment and expenses of settling the estate, and all the proceedings, by which the final result is to be ascertained.   The *lex domicilii* governs in the final dis-

tribution. *Storer* & al. v. *Hinkley,* 1 *Root,* 413. *Perkins* & al. v. *Williams,* 2 *Root* 462. *Riley* v. *Riley,* 3 *Day* 74. *Slocum* v. *Sanford,* 2 *Conn. Rep.* 533. *Sumner* v. *Child,* 2 *Conn. Rep.* 627. per *Gould,* J. *Williams* & al. v. *Storrs* & al. 6 *Johns. Chan. Rep.* 353.

Where any property shall have been received, by the order of those courts, it will doubtless be inventoried by the executors before our court of probate, and will be ready for distribution, on the settlement of the estate. It is not here intended to say, that no action can be sustained nor claim enforced against *F. A. Norton* and *Erastus Lyman* for neglect or mismanagement in relation to that portion of the estate, which, according to the suggestions in the bill, has been under their controul. It is only decided, that no foundation is laid in the bill for the interposition of a court of chancery.

5. Jurisdiction is insisted, on the ground of the legacies being *specific.* There are, to be sure, specific legacies of a clock, watch, furniture, &c. and specific devises of real estate to the widow and to *F. A. Norton.* But in one sense, this will dispposes of his whole estate specifically ; for the disposition varies, in several respects, from a distribution under our statute. But it would be strange to infer, that for this reason, aid should be sought in a court of chancery. The will is perfectly intelligible : there can be no ambiguity, nor any pretence of any, except to draw the settlement of this estate from the appropriate tribunal into the superior court. The testator gives 7000 dollars, in *Bridgeport* bank stock, to his wife ; and he declares, that this bank stock is a part of the one-third of the personal estate, which he had devised to her in the clause immediately preceding. It would have been difficult to have employed language more explicit.

6. The plaintiff also states, that there are difficulties existing respecting moneys, which have been received in discharge of mortgages of real estate, and out-standing contracts, given, by the deceased, while living, to convey land, which the executors have been compelled to adjust, and take up ; and the question now is, whether lands thus situated are real or personal estate ; as also in respect of lands mortgaged to the deceased, which the executors have been compelled to accept in lieu of the debts secured by such mortgages ; and also there are many other embarrassments in the settlement of so large an estate. And can either or all these reasons render it necessary, that a

court of chancery should assume a jurisdiction, when the court of probate is fully authorized and empowered to decide all these questions? Shall a court of probate settle only those estates, which present no perplexing questions? If there are difficulties, it is the duty of the court, to whom the jurisdiction over this subject appertains, to overcome them. Nor is there any just reason to apprehend a failure of justice; as from any decree or order of the court of probate, as before shewn, an appeal lies to the same court to which this bill is brought.

*Litchfield, June, 1832.*

*Beach v. Norton.*

7. There is yet another ground, urged by the plaintiff. This is founded on the 4th and 5th sections of the statute, *tit.* 1. *Account.* The 4th section authorizes an executor, *who is also a residuary legatee,* when all or any part of his legacy is withholden from him, by his co-executor, to bring his action of account against him: and the 5th section provides, that where there shall be *such a claim,* by one co-executor against *two or more co-executors,* the remedy shall be by bill or petition in equity. This is not, in any respect, the case of a co-executor, where a legacy is withholden from him. The plaintiff is not a legatee, and therefore, not entitled to any legacy.

It seems to me, then, that on no ground stated in the bill is there any foundation for relief; and that the superior court be so advised.

The other Judges were of the same opinion.

Demurrer to be sustained; and
Bill dismissed.