

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

June 1, 1966

General Thomas S. Bishop          Opinion No. C-700
Adjutant General
Adjutant General's Dept.          Re:  Constitutionality of Section
Austin, Texas                          5 of Article 5766 as amended
                                       by House Bill 410, Acts of
                                       the 59th Legislature, Regular
                                       Session, Chapter 690, page
Dear General Bishop:                   1601, at page 1604.

          You have requested our opinion on the validity of
Section 5 of Article 5766, Vernon's Civil Statutes, as amended,
which reads as follows:

          "Section 5. (a)  Any member of the State Military
     Forces going to and returning from any parade, encamp-
     ment, drill or other meeting which he may be required
     by law to attend, shall, together with his conveyance
     and military property, be allowed to pass through all
     toll roads, bridges and ferries, free of charge, if he
     is in uniform and if he presents an order for duty or
     such identification as the Adjutant General shall pre-
     scribe.

          "(b)  Any member of the State Military Forces who
     claims the privilege conferred in Subsection (a) when
     he is not in truth and in fact in the status therein
     mentioned shall upon conviction thereof be guilty of a
     misdemeanor punishable by a fine of not less than Fifty
     Dollars ($50) nor more than Two Hundred Dollars ($200)."

          The question raised in your request is whether the
above-quoted provisions impair the obligation of the contract
entered into by the Texas Turnpike Authority pursuant to the
provisions of Article 6674v, dated April 1, 1965, the same
being a trust agreement pursuant to Section 11 of Article 6674v,
Vernon's Civil Statutes.  Section 502 of the trust agreement
reads as follows:

          "Section 502.  The Authority covenants that tolls
     will be classified in a reasonable way to cover all
     traffic, so that the tolls may be uniform in application
     to all traffic falling within any reasonable class regard-

less of the status or character of any person, firm or corporation participating in the traffic; that no reduced rate of toll will be allowed within any such class except through the use of commutation or other tickets or privileges based upon frequency or volume and that no free vehicular passage will be permitted over the (Tollway) (Turnpike) other than its approaches and service roads, except to members, officers, employees, agents and representatives of the Authority and the State Highway Department, police officers of the United States, of the State of Texas and of its political subdivisions, but only when any of them is acting in the discharge of their official duties."

Section 16 of Article I of the Constitution of Texas prohibits the enactment of any law impairing the obligation of contracts. Section 11 of Article 6674v authorizes the Texas Turnpike Authority to enter into trust agreements providing for the issuance of bonds and making provisions protecting and enforcing the rights and remedies of the bond holders. Section 12 of Article 6674v provides that the tolls shall not be subject to supervision or regulation by any other commission, board, or bureau of the State.

The Supreme Court of Texas in Texas Turnpike Authority v. Shepperd, 279 S.W.2d 302 (1955), in passing upon the validity of Article 6674v, recognized that this article granted to the Texas Turnpike Authority the power to create contractual obligations which cannot be impaired in view of the provisions of Section 16 of Article I of the Constitution of Texas; therefore, the question before us is whether Section 502 of the trust agreement created an obligation which is impaired by the provisions of Section 5 of Article 5766 as amended by the 59th Legislature.

In the case of Travelers' Ins. Co. v. Marshall, 76 S.W.2d 1007 (Tex. Sup., 1934), it was held that the existence of the industrial depression of the 1930's did not authorize the Legislature under the police power to enact even emergency legislation of a limited duration which impaired the obligation of contracts and therefore held invalid the Emergency Moratorium Law enacted in 1934. Likewise, Langever v. Miller, 76 S.W.2d 1025 (Tex.Sup., 1934), held invalid for the same reason an act to cancel deficiency judgments during the same period. In Langever v. Miller, supra, it is stated:

"We are not much concerned with the superfine distinction sometimes drawn in discussing the impairment of the obligation of contracts, between the 'obligation' and the 'remedies' for their enforcement. We agree with what the

Supreme Court of Alabama said in the case of Sanders v. Cabaniss, 43 Ala. 173, 188, when discussing legislative encroachments on the judiciary: 'It is a very clear proposition, that what cannot lawfully be done directly, cannot be done indirectly--no device, though it be so cunningly contrived as to make wrong appear to be right, can justify it.' It seems to us that the act before us does in fact operate upon and impair the 'obligation' of the contract, in that it nullifies that portion of the contract, read in the light of the then existing statute, which entitled the mortgagee to a deficiency judgment. But, if the statute be regarded as one which merely operates upon the remedy or remedies for the enforcement of the contract, it is obvious that it abridges the rights of the mortgagee resulting from the stipulations in the agreement in such manner as to make the contract less valuable, and denies him lawful remedies which existed when the instrument was executed without substituting therefor others equally valuable and equally effective.

". . .

"'"One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force."' Planters' Bank v. Sharp et al., 6 How. 301 /12 L.Ed. 447/.

". . .

"'Any impairment of the obligation of a contract, is within the prohibition of the Constitution; the degree of impairment being immaterial. Walker v. Whitehead, 16 Wall. 314, 21 L.Ed. 357.

"'By the obligation of a contract is meant the means, which at the time of its creation the law afforded for its enforcement. Louisiana v. St. Martin's Parish, 111 U.S. 716, 4 S.Ct. 648, 28 L.Ed. 574; Von Hoffman v. Quincy, 4 Wall. 535, 18 L.Ed. 403.

"'"While it is undoubted," says Ruling Case Law (volume 6, § 321), "that the legislature may make changes in the remedy, it is necessary that the contract should be left with the same force and effect, including the substantial means of enforcement, which existed when it was made."

"'By the same authority the doctrine is announced that the most certain test of impairment is that the value of the contract has been diminished. Volume 6, p. 329, § 520.'" (Emphasis supplied by the Court)

In Travelers' Ins. Co. v. Marshall, supra, the Court stated:

"We are asked, however, to hold that, under the police power, one of the powers of government (State v. Coleman, 96 Conn. 190, 113 A. 385) vitalized by emergency conditions, the Legislature had the authority to pass the measure before us. We are asked to do this, although the Bill of Rights, section 16, expressly prohibits the enactment of laws impairing the obligation of contracts. Can we do this? . . .

"Obviously all these questions must be answered in the negative. This is so because the pronouncements of the Constitution are 'imperious, supreme and paramount.' As said by a leading authority:

"'Necessity that is higher than the Constitution can safely have no place in American jurisprudence. That principle is necessarily vicious in its tendency, and subversive of the Constitution. It should be, and is, limited by the constitutional inhibitions. * * *The Constitution, and a controlling necessity antagonistic to its requirements, cannot exist.' . . .

"Since the impairment of the obligation of contracts is prohibited by section 16, article 1, of the Bill of Rights, without any specified exception in favor of legislative action to the contrary during industrial depressions or emergency periods, we are without power to write such an exception into the organic law. As said by one of the Texas authorities previously cited: 'The enactment of laws impairing the obligation of contracts is forbidden by section 16 of article 1 of the constitution of Texas. * * * The limitation thus imposed is emphatic, unambiguous and without exception; it applies alike to all contracts and protects all obligations of contracts from destruction or impairment by subsequent legislation.' 9 Texas Jur. p. 541, § 106.

"However, we will not rest our opinion here, but out of deference to the importance of the legislation before us, will enter upon an inquiry as to whether or not, in view of the history of the contract clause and the decisions relative

to it, the police or general governmental power may be
so applied to it in times of emergency as to permit the
legislation here involved. The meaning which a constitu-
tional provision had when adopted, it has to-day; its
intent does not change with time nor with conditions;
while it operates upon new subjects and changed conditions,
it operates with the same meaning and intent which it had
when formulated and adopted. 9 Texas Jur. p. 427, § 18;
6 Ruling Case Law, p. 46, § 39; Cooley's Constitutional
Limitations (8th ed.) vol. 1, p. 123. As Judge Cooley
says: 'A constitution is not be to made to mean one thing
at one time, and another at some subsequent time when the
circumstances may have so changed as perhaps to make a
different rule in the case seem desirable. * * * It is
with special reference to the varying moods of public
opinion, and with a view to putting the fundamentals of
government beyond their control, that these instruments
are framed. * * *The meaning of the constitution is fixed
when it is adopted, and it is not different at any subse-
quent time when a court has occasion to pass upon it.'
Cooley's Const. Lim. vol. 1, pp. 123, 124." (Emphasis
supplied by the Court).

Applying the above-quoted principles announced in the
foregoing authorities as well as the authorities cited in Travelers'
Ins. Co. v. Marshall, supra, and Langever v. Miller, supra, we are
of the opinion that Section 5 of Article 5766 as amended by the
59th Legislature is unconstitutional for the reason that its pro-
visions impair the obligations of the Texas Turnpike Authority
created by the trust agreement entered into pursuant to the pro-
visions of Section 11 of Article 6674v. The trust agreement
specifically obligates the Authority to prohibit free vehicular
traffic over the turnpike other than those excepted from its pro-
visions, while Section 5 enacted subsequent to the creation of
the obligation above noted specifically provides that certain
personnel not excepted in the trust agreement shall be allowed
free use of all toll roads.

This opinion is not to be construed as prohibiting
the State from making free use of the turnpike for its State
militia when the State militia is called out by the Governor to
aid in the enforcement of the laws in times of public danger. In
such event, the members of the State militia are held to exercise
the same authority as that which a peace officer may exercise. 57
Corpus Juris Secundum 1098-1099, Militia Section 21, and authorities
cited therein. Therefore, in such event, members of the State
militia would constitute personnel specifically excepted in the
Trust Agreement.

## SUMMARY

Section 5 of Article 5766, Vernon's Civil Statutes, as amended by House Bill 410, Acts of the 59th Legislature, providing that certain personnel of the State military forces under certain conditions shall be allowed free use of toll roads in this State, violates Section 16 of Article I of the Constitution of Texas for the reason that it impairs the obligation of a contract entered into by the Texas Turnpike Authority pursuant to the provisions of Section 11 of Article 6674v, Vernon's Civil Statutes.

Yours very truly,

WAGGONER CARR
Attorney General

By: John Reeves
      John Reeves
      Assistant Attorney General

JR:sck

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Pat Bailey
Milton Richardson
James Strock

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright